UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**



FILED

AUG - 5 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

OTHO NATHANIEL PARTLOW,

        Plaintiff,

v.                          Case No. 2:09cv474

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Otho Nathaniel Partlow ("Partlow"), brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), by order of reference filed December 4, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2007, Partlow applied for DIB under Title II of the Social Security Act and SSI payments under Title XVI of the

Act. (R.[1] at 60-67.) Partlow, who was forty-seven (47) years old at the time (R. at 8), alleged an onset of disability as of July 8, 2007, due to degenerative disc disease ("DDD")[2] and hypertension (R. at 60-67). Partlow completed the tenth grade (R. at 92) and has past work experience as a construction worker (R. at 89). Partlow's applications were denied by the Social Security Administration initially on November 28, 2007 (R. at 37-38), and upon reconsideration on April 8, 2008 (R. at 39-40).

On June 3, 2008, Partlow requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 54.) On February 27, 2009, Partlow appeared and testified at a hearing in Norfolk, Virginia. (R. at 27-36.) Partlow was represented by counsel at the hearing. (R. at 27.)

On May 7, 2009, the ALJ issued a written decision finding that Partlow was not disabled within the meaning of the Act. (R. at 8.) Specifically, the ALJ found that, at the time of the February 27, 2009 hearing, Partlow suffered from DDD, hypertension and a right shoulder tear, but that only the DDD and hypertension qualified as severe impairments. (R. at 11.) The ALJ found that Partlow's

---

[1] "R." refers to the administrative record of proceedings relating to this case.

[2] Partlow injured his back in a car accident on July 8, 2007. (R. at 174-82)

2

shoulder tear was a non-severe impairment.[3]  (R. at 11.)  At step

three, the ALJ determined that Partlow's impairments did not meet

or exceed one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.   (R. at 11.)   The ALJ then found that

Partlow had the residual functional capacity ("RFC") to perform the

full range of light work.   (R. at 11-13.)   At step four, the ALJ

determined that Partlow could not return to his past work as a

construction laborer because that job requires heavy exertional

skills.   (R. at 13.)   Finally, at step five, the ALJ found that

there are a significant number of jobs in the national economy that

Partlow could perform.   (R. at 13-14.)   Accordingly, the ALJ

concluded that Partlow was "not disabled" within the meaning of the

Act.   (R. at 14.)   Partlow was forty-nine (49) years old at the

time of the ALJ's decision.   (R. at 8.)

On May 19, 2009, Partlow requested review of the ALJ's

decision by the Appeals Council of the Office of Hearings and

Appeals ("Appeals Council").   (R. at 4.)   On July 27, 2009, the

Appeals Council denied Partlow's request, stating that it found no

reason to review the ALJ's decision. (R. at 1-3.)   This makes the

ALJ's decision the "final decision" of the Commissioner subject to

judicial review here, pursuant to 42 U.S.C. § 405(g).   See 20

C.F.R. §§ 404.955 and 416.1481.

---

[3] The shoulder tear did not constitute a severe impairment
because it had not existed for a period of twelve (12) months or
more at the time of the hearing.

3

Partlow brought the instant action seeking judicial review of the decision of the Commissioner denying his claims for DIB and SSI. Partlow filed the instant complaint on September 25, 2009, which Defendant answered on December 3, 2009. Partlow filed a Motion for Summary Judgment with a memorandum in support on January 6, 2010. Defendant filed a Motion for Summary Judgment and in opposition to Partlow's Motion for Summary Judgment with a memorandum in support on February 4, 2010. Neither party indicated special circumstances requiring oral argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda. See Fed. R. Civ. P. 78(b); Local Civ. R. 7(J).

## II. **STANDARD FOR SUMMARY JUDGMENT**

The Court shall grant summary judgment if, viewing the record as a whole, it concludes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp, 477 U.S. at 322-27. In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences

4

favorable to the non-movant.  Id.

In deciding a summary judgment motion, the Court must "view[]
the record as a whole in the light most favorable to the non-
movant."  Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,
763 F.2d 604, 610 (4th Cir. 1985).  If "the evidence . . . is so
one-sided that one party must prevail as a matter of law," the
Court should grant summary judgment in that party's favor.
Anderson, 477 U.S. at 251-52.  Moreover, summary judgment must be
granted where the non-moving party "fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial,"  Celotex, 477 U.S. at 322, as the non-moving party
is required to "set out specific facts showing a genuine issue for
trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the
standards upon which the Court evaluates the motions for summary
judgment do not change."  Taft Broad. Co. v. United States, 929
F.2d 240, 248 (6th Cir. 1991).  "[T]he court must review each
motion separately on its own merits 'to determine whether either of
the parties deserves judgment as a matter of law.'"  Rossignol v.
Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris
Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  "When
deciding cross-motions for summary judgment, a district court
retains the responsibility to examine the record to ensure that no

disputed issues of fact exist, despite the parties' assurances to that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## III. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Partlow was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456 (citing

6

King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court "do[es] not conduct a *de novo* review of the evidence" or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. The issue before this Court, therefore, is not whether Partlow is disabled, but whether the Commissioner's finding that Partlow is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

## IV. ANALYSIS

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Titles II and XVI of

7

the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[5] that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. §§ 423(d)(2)(A), 1382C(a)(3)(B).

## A. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. §§ 404.1520 and 416.920. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so,

---

[4] "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[5] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

the claimant is <u>not</u> disabled and the inquiry is halted. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

(2) Whether the claimant has a severe impairment. If not, the claimant is <u>not</u> disabled and the inquiry is halted. <u>Id.</u> §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant <u>is</u> disabled and the inquiry is halted. <u>Id.</u> §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is <u>not</u> disabled and the inquiry is halted. <u>Id.</u> §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[6] and his vocational abilities. If so, the claimant is <u>not</u> disabled. <u>Id.</u> §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In this case, the ALJ decided at step five of the analysis

---

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). <u>See</u> 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

that Partlow was not disabled.

## 1. Steps One Through Three

At step one of the analysis, the ALJ determined that Partlow had not engaged in substantial gainful activity since July 8, 2007. (R. at 10.) At step two, the ALJ determined that Partlow's hypertension and DDD are severe impairments. (R. at 10.) At step three, the ALJ found that Partlow did not have a severe impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. at 11.)

## 2. The ALJ's RFC Determination

Prior to step four, the ALJ determined Partlow's RFC to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. Based on the objective medical evidence and Partlow's testimony, the ALJ determined that Partlow retained the RFC to perform the full range of light work. (R. at 11.)

### a. Plaintiff's Testimony

In reaching the conclusion about Partlow's RFC, the ALJ gave consideration to Partlow's testimony. Partlow testified that his entire work history had been in heavy construction, that he had a back problem and high blood pressure, and that his pain began in July 2007 after he was involved in a car accident. (R. at 32.) Partlow also testified that he could not kneel, could not lift

10

much, could not cut his hair, had trouble tying his shoes, and basically could not do anything that required bending over. (R. at 33.) Additionally, Partlow testified that his MRI indicated problems with his L5-S1 disc. (R. at 33.)

The ALJ found that Partlow's testimony was not entirely credible. (R. at 12.) Specifically, the ALJ found "that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." Id.

## b. Review of the Medical Evidence

The ALJ next considered the objective medical evidence in the record and found that "[t]he claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b)." (R. at 11.) He based these findings on Partlow's medical records, physical therapy records, function reports, and emergency room reports. (R. at 11-13.) A summary of the pertinent evidence upon which the ALJ based his decision follows.

On July 10, 2007, Partlow went to the emergency room at Peninsula Regional Medical Center, complaining of neck and back pain related to his involvement in a car accident two (2) days

earlier. (R. at 174-82.) He was observed to have normal straight leg raises, and normal extremities with adequate strength and range of motion. (R. at 176.) Partlow's MRIs indicated that he suffered from DDD. Id. On a follow-up appointment on August 6, 2007, Dr. Greco, Partlow's treating physician, found evidence of a herniated disc at L5-S1, mild DDD, no difficulty with stance or station, and a mildly antalgic gait. (R. at 153.) Dr. Greco recommended conservative treatment, steroid shots, pain medications, and increased activities as tolerated. (R. at 148-55.)

In a September 24, 2007 emergency room report, the reviewing doctor indicated that Partlow was in no acute distress and appeared well-developed and well-nourished. (R. at 167.)

Dr. Patrick Dom, an anesthesiologist at Peninsula Regional Medical Center, reported in an October 11, 2007 report that Partlow was well-developed, sat comfortably in his chair, and exhibited tenderness in the L4, L5, and S1 upon palpation. (R. at 157.) Dr. Dom identified DDD at L4-L5 and L5-S1, and evidence of a herniated disc. Id.

On November 27, 2007, Dr. Greco reported that Partlow "ambulated with a normal heel/toe gait, no difficulties with stance or station and normal mood/affect," and that Partlow had only moderate restriction in the lumbar range of motion, and mild diffuse palpation tenderness. (R. at 212). Dr. Greco opined that Partlow should continue conservative treatment, and that "he may

12

need to consider [a] less strenuous occupation." (R. at 211.)

On December 3, 2007, Partlow went to the emergency room for a tooth abscess. (R. at 196-209.) The emergency room record indicates that Partlow was alert, had symmetric reflexes, and his extremities had normal strength and tone with a full range of motion. (R. at 197.)

On January 10, 2008, Dr. Greco noted that Partlow had no obvious deformity, no areas of localized pain or tenderness, no obvious evidence of asynchronous or segmental motion, no range of motion restriction in the right and left lateral forward flexion/extension bending. (R. at 210.) Partlow also had no difficulty with heel and toe walking, no obvious atrophy of the quadriceps or calf muscles, normal sensation to touch in the lower extremities, and normal knee and ankle reflexes. Id. Dr. Greco noted that the mild DDD and disc herniation at L5-S1 was stable, that no changes appeared on the MRI, and that Partlow should continue with in-home physical therapy. Id. Partlow was also attempting to acquire alternative employment at this time. Id.

Dr. Greco performed a functional limitation assessment of Partlow on March 19, 2009.[7] (R. at 258-59.) Dr. Greco's report notes that Partlow is able to work with limitations at least eight

---

[7] The doctor's signature on the March 19, 2009, medical evaluation is illegible. (R. at 259.) Partlow's counsel testified at the hearing that this medical evaluation was prepared by Dr. Greco. (R. at 35.)

(8) hours per week, cannot lift objects greater than five (5) lbs., cannot sit or stand for greater than one (1) hour at a time, cannot walk distances greater than fifty (50) feet, cannot climb four (4) to six (6) steps, and cannot drive an automobile. (R. at 258-59.) The ALJ rejected this evaluation because it was inconsistent with the available clinical evidence. (R. at 13.)

Dr. Gibson performed an evaluation of Partlow on March 12, 2009. (R. at 269-70.) Dr. Gibson's report notes that Partlow's pain is so severe that it affects his concentration and memory frequently, that he is unable to work full time at any level of exertion, that he cannot sit or stand for more than 1-2 hours at a time, that he can only occasionally lift 11-25 lbs., and that he can frequently lift ten (10) lbs. or less. (R. at 269-70.) Additionally, Dr. Gibson suggested complete restrictions from unprotected heights and being around moving machinery, moderate restrictions from driving automotive equipment, and mild restrictions from exposure to marked changes in temperature and humidity. (R. at 270.) Dr. Gibson based his medical evaluation solely on Partlow's January 2009 MRI. (R. at 270.) The ALJ rejected this evaluation because it was inconsistent with the available clinical evidence. (R. at 13.)

Partlow participated in physical therapy between October 24, 2007, and November 30, 2007, at McCready Health Services Foundation. (R. at 242.) The physical therapist's initial

assessment of Partlow recognized that Partlow suffered from a herniated disc and back pain, and that his social history included construction work and that he had done some light work.[8]  (R. at 252.)  Partlow's initial pain level was a 7/10.  (R. at 251.)  On November 5, 2007, Partlow reported his pain was a 3/10, and the physical therapist reported that he had improved mobility.  (R. at 249.)  On November 9, 2007, the physical therapist reported that Partlow was sore from moving furniture the day before.  (R. at 248.)  On November 16, 2007, Partlow reported that he was "75% better," and his pain on discharge was a 3.5/10.  (R. at 246.)  Included in the November 19, 2007 physical therapy report is a statement by Partlow which reads, "I talked to my lawyer, [he] keep[s] telling me not to work. It may take a year for me to get my money, but I need it now."  (R. at 245.)  On November 30, 2007, at his last physical therapy session, Partlow reported that he was getting better and that his back pain was at most a 4/10.  (R. at 243.)

Finally, the ALJ considered the opinion evidence of the state agency medical consultants.  On November 28, 2007, Dr. S.K. Najar performed an RFC assessment of Partlow.  (R. at 187-94.)  Dr. Najar noted that Partlow was physically limited to occasionally lifting twenty (20) lbs., frequently lifting ten (10) lbs., sitting,

_____

[8] The Court interprets the handwriting in the physical therapy initial evaluation to read that Partlow "has found some light work."  (R. at 252.)  Some of the words in the notes are illegible.

standing, or walking about six (6) hours in an eight-hour workday, and unlimited pushing or pulling. (R. at 188.)

On April 3, 2008, Dr. Carolina Langa performed a physical residual functional capacity assessment of Partlow. Dr. Langa noted that Partlow should be restricted to occasionally lifting fifty (50) lbs., frequently lifting twenty-five (25) lbs., standing, walking, or sitting about six (6) hours in an eight-hour workday, and unlimited pushing or pulling capacity.[9] (R. at 215.)

Partlow received an MRI in January 2009. (R. at 261.) The findings included normal vertebral body morphology, a likely bone island at L2, a minimal broad-based disc bulge with mild facet arthropathy at L5-S1, and a minimal broad based disc bulge with

---

[9] Dr. Langa bases her RFC determination on her January 2008 evaluation of Partlow, which included the following notes:

Exam shows pain level as 7 and intermittent; no deformities, palpation and percussion of the T/L spine shows no localized tenderness, no significant tenderness over the CVA regions, sacroiliac joints, sciatic notches or greater trochanters, no step off at the LS junction, no problems [with] extension or ROM in forward flexion/extension, right or left lateral bending. No difficulty [with] toe walking, no muscle atrophy, [normal] knee [and] ankle reflexes and they are symmetrical. He is alert, oriented, and answers appropriately. Neurovascular exam is [normal], feet are well profused. MRI dated in 12/07 shows mild DDD [with] evidence of a disc herniation at the L5-S1 which appears stable and no other significant findings on the MRI compared to the previous workup. MD notes that the [claimant] is not a surgical candidate based on clinical and radiographic findings.

(R. at 219.)

mild facet arthropathy at L4-L5.  (R. at 264.)

### 3. **Steps Four and Five**

At step four of the analysis, the claimant bears the burden to prove that he is unable to perform his past relevant work.  Grant v. Schwiker, 699 F.2d 189, 191 (4th Cir. 1983).  Based upon the RFC determination, supra, that Partlow is capable of performing the full range of light work, the ALJ found that Partlow's impairments prevented him from performing the functional demands of his previous occupation as a construction worker.  (R. at 13.) Construction work requires heavy exertional skills, which the claimant is no longer capable of performing.  Id.  At step five however, the ALJ did find that, based on Partlow's RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  (R. at 13-14.)  Therefore, the ALJ found that Partlow is not disabled within the meaning of sections 216(i) and 1614(a)(3)(A) of the Social Security Act.  (R. at 8.)

### B. **Plaintiff's Claims**

Plaintiff challenges the ALJ's determination on several grounds.  He first contends that the ALJ was required to give controlling weight to the opinions of Dr. Greco and Dr. Gibson, two of Partlow's physicians, and that he failed to adequately explain his rejection of those opinions.  Partlow also argues that the ALJ made a preliminary finding during the oral hearing, and that the ALJ erred in not explaining why he deviated from that finding in

17

his written opinion. Lastly, Partlow argues that the ALJ erred in ignoring certain record evidence that was introduced subsequent to the oral hearing. As discussed below, the Court FINDS that substantial evidence supports the weight that the ALJ afforded the opinions of Dr. Greco and Dr. Gibson, and that Partlow's other claims are without merit. Accordingly, the Court RECOMMENDS that the ALJ's decision be AFFIRMED.

## 1. **Weight Assigned to Physicians' Opinions**

Partlow alleges that the ALJ improperly rejected the functional capacity assessments of Dr. Greco and Dr. Gibson, and that the ALJ did not adequately explain the weight he accorded their opinions. (Pl.'s Mem. 6.) For the following reasons, the Court FINDS that the ALJ adequately considered and weighed the opinions of Dr. Greco and Dr. Gibson.

A treating physician's opinion as to the existence, nature, or severity of a claimant's impairment is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The physician's opinion should be given "significantly less weight" when it is not supported by clinical evidence or is inconsistent with other evidence of record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ has discretion to give less weight to the opinion of a treating

18

physician where there exists persuasive contrary evidence.  See Johnson v. Barnhart, 434 F.3d 650, 655 (4th Cir. 2005); Hunter v. Sullivan, 993 F.2d 21, 35 (4th Cir. 1992).  However, if the ALJ decides to discredit a medical opinion, he must explain his reasoning for doing so and indicate what weight he assigned to the opinion.  This Court must rely on the ALJ's explanation and cannot substitute its own explanation for rejecting a medical opinion.  See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (noting that the Court is limited to the ALJ's opinion when evaluating the ALJ's decisions).

A treating physician's opinion as to a claimant's RFC, however, is not entitled to controlling weight or special significance. Opinions on these issues "are not medical opinions, but are instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case."  20 C.F.R. §§ 404.1527(e), 416.927(e).  Current regulations distinguish between an RFC, which only the Commissioner can determine, 20 C.F.R. §§ 404.1546, 416.946, and a "medical source statement about what [the claimant] can still do," id. at §§ 404.1513(b)(6), 416.913(b)(6); see also SSR 96-5p, 61 Fed. Reg. 34,471, 34,473-74 (July 2, 1996).  Given that such medical source statements are not technically "medical opinions," by definition they can never be given "controlling" weight.  See SSR 96-5p, 61 Fed. Reg. at 34,473-74.  There is no "special significance to the

19

source of an opinion on issues [that are] reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ultimate question of whether a claimant is disabled under the Act is an issue reserved to the Commissioner, and therefore, a physician's statement that the claimant is "disabled" or "unable to work" may never be accorded controlling weight.  Id. §§ 404.1527(e)(1), 416.927(e)(1).  Nevertheless,

> opinions from any medical source on issues reserved to the Commissioner must never be ignored.  The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.

SSR 96-5p, 61 Fed. Reg. at 34,472; see also 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  Once the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight, if any, to which the opinion is entitled:[10]

---

[10] The Sixth Circuit explained the purpose behind requiring an ALJ to articulate the reasons for the weight he accorded to a treating physician's opinion:

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that []he is not, unless some reason for the agency's decision is supplied."

(1) the length of the treatment relationship and frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the opinion's support by medical evidence;

(4) the opinion's consistency with the record as a whole; and

(5) the treating physician's specialization.

20 C.F.R. §§ 404.1527(d)(2-5), 416.927(d)(2-5). These factors may not be omitted or disregarded by the ALJ in weighing the value of a treating physician's medical opinion. See Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam) (stating that the ALJ "must consider" the factors set forth in the regulations when declining to give controlling weight to the opinion of a treating physician); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) (joining other federal courts in requiring the ALJ to consider the regulatory factors before declining to give weight to a treating physician's opinion, and noting that the ALJ should consider those factors on remand); Winford v. Chater, 917 F. Supp. 398, 401 (E.D. Va. 1996) ("[I]f an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the five factors identified in the regulation . . . .").

---

Blakely v. Comm'r Soc. Sec., 581 F.3d 399, 407 (6th Cir. 2009) (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)).

In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his attention.[11]  See 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

In contrast, the opinions of non-treating physicians are accorded less weight than the opinions of treating physicians.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007) (noting that treating physicians' opinions should be accorded more weight than non-treating physicians' opinions); Mark v. Astue, 246 F. App'x 482, 485 (9th Cir. 2007); Cyprus Cumberland Res. v. Dir., Office of Workers' Comp. Programs, 170 F. App'x 787, 792 (3d Cir. 2006).  The ALJ does not need to address each of the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d), used to determine the weight accorded a medical opinion, if that medical opinion comes from a non-treating physician, or if that opinion did not consider evidence in the record of the claimant's functional capacity.  See Lauxman v. Astrue, 321 F. App'x 766, 769 (10th Cir. 2009); Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

### a. Dr. Greco's Opinion

Plaintiff claims that the ALJ erred in not according

---

[11] For example, the ALJ must consider the medical source's degree of "understanding of [the Social Security Administration's] disability programs and their evidentiary requirements," or the medical source's "familiar[ity] with the other information in [the claimant's] case record."  20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

controlling weight to Dr. Greco's March 19, 2008 medical opinion and for not adequately explaining the weight he accorded that opinion. For the reasons discussed below, the Court FINDS that the ALJ was not required to accord controlling weight to Dr. Greco's March 19, 2008 medical opinion and that the ALJ adequately considered the factors established by the regulations.

The specific medical opinion that the ALJ disregarded is a functional capacity assessment conducted by Dr. Greco on March 19, 2008. (R. at 259.) The assessment noted that Partlow suffered from severe functional impairments that limited his ability to work. Id. Specifically, Dr. Greco opined that Partlow is able to work with limitations at least eight (8) hours per week, cannot lift objects greater than five (5) lbs., cannot sit or stand for greater than one (1) hour at a time, cannot walk distances greater than fifty (50) feet, cannot climb four (4) to six (6) steps, and cannot drive an automobile. (R. at 258-59.) Because the opinion concerns Partlow's ability to perform work, which is an issue reserved to the Commissioner, SSR 96-5p, 61 Fed. Reg. at 34,472, the ALJ was not required to accord the opinion controlling weight. Id. However, the ALJ was required to determine the weight that Dr. Greco's March 19, 2008 opinion should have been afforded, in accordance with the factors listed in 20 C.F.R. §§ 404.1527(d)(2-5) and 416.927(d)(2-5). Not every factor needs to be addressed in every case, but "the ALJ's decision [must be] sufficiently specific

23

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Armijo v. Astrue, No. 09-1305, 2010 WL 2653364, at *5 (10th Cir. June 16, 2010) (citations omitted); see also Davison v. Astrue, No. 09-15053, 2010 WL 1253068, at *2 (11th Cir. Apr. 1, 2010) ("When an ALJ articulates specific reasons for failing to accord controlling weight to the opinion of a treating or examining physician and those reasons are supported by substantial evidence, there is no reversible error.").

In his opinion, the ALJ says he rejected Dr. Greco's March 19, 2008 opinion because it was "not supported by any clinical evidence in the record." (R. at 13.) In his opinion, the ALJ noted that Dr. Greco was Partlow's treating physician (R. at 12) and that Dr. Greco was an orthopaedic surgeon (R. at 10).[12] Additionally, it is apparent that the ALJ considered the length and extent of Dr. Greco's relationship with Partlow because he cited numerous medical records evidencing Dr. Greco's treatment of Partlow. (R. at 10-13.)

Although, the ALJ did not explicitly state how Dr. Greco's opinion is not supported by the medical evidence, the ALJ did discuss a number of medical evaluations, objective tests, and treatment notes, which are inconsistent with Dr. Greco's functional

---

[12] The ALJ's discussion of Dr. Greco's specialization, frequency of examination, and nature and extent of the treatment relationship occurs in the ALJ's Step Two analysis and RFC analysis.

assessment. (R. at 12-13.) In contrast to Dr. Greco's opinion that Partlow's conditions greatly limit Partlow's ability to complete various physical tasks, the ALJ's discussion of the medical evidence indicates that Partlow is not so limited. The ALJ relied extensively on Dr. Greco's own treatment notes in arriving at his RFC determination. Dr. Greco's evaluations indicated that Partlow had mild to moderate restriction in range of motion, mild tenderness, normal muscle strength and tone, and no difficulty with stance/station or heel and toe walking. (R. at 148-55, 212-13.) With regard to physical activity and ability to work, Dr. Greco advised that Partlow could "increase his activities as tolerated" (R. at 148), was "able to return to work in the construction field but with some difficulty" (R. at 154), "may need to consider [a] less strenuous occupation" (R. at 211), and is "unable to work in construction secondary to his discomfort in his back" (R. at 213). Dr. Greco also recommended only conservative measures as treatment, namely epidural injections, pain medications, and physical therapy. (R. at 152, 155.) The objective tests also suggest that Partlow's condition may not be as limiting as Dr. Greco opined. Two (2) MRIs, conducted on December 4, 2007, and January 27, 2009, revealed mild DDD, but showed no central canal or foraminal stenosis. (R. at 209, 263-64.) Additionally, an x-ray of the lumbar spine performed in January 2009, indicated that there was no subluxation or compression fracture. (R. at 265-66.) Finally, the ALJ gave

"significant weight" to the functional limitation assessments performed by two (2) Disability Determination Services (DDS) medical consultants. (R. at 13.) On November 28, 2007, Dr. S.K. Najar opined that Partlow was physically limited to occasionally lifting twenty (20) lbs., frequently lifting ten (10) lbs., sitting, standing, or walking about six (6) hours in an eight-hour workday, and unlimited pushing or pulling. (R. at 187-94.) On April 3, 2008, Dr. Carolina Langa recommended that Partlow be restricted to occasionally lifting fifty (50) lbs., frequently lifting twenty-five (25) lbs., standing, walking, or sitting about six (6) hours in an eight-hour workday, and unlimited pushing or pulling capacity. (R. at 215.) Both of these functional assessments indicate that Partlow's physical limitations are not as severe as Dr. Greco's functional assessment suggested.

Here, the ALJ clearly indicated that he rejected the March 19, 2008 opinion of Dr. Greco. Within his opinion, the ALJ considered Dr. Greco's speciality, the nature, extent, and length of his treatment relationship with Partlow, and specifically credited medical evidence and reports, including Dr. Greco's own treatment notes, that are inconsistent with Dr. Greco's functional assessment. Thus, the Court FINDS that the ALJ weighed the evidence in a manner that complies with the regulations and that his findings are entitled to deference.

## b. Dr. Gibson's Opinion

Plaintiff claims that the ALJ erred in not according controlling weight to Dr. Gibson's March 12, 2009 medical opinion and for not adequately explaining the reasons why he rejected that opinion. For the reasons discussed below, the Court FINDS that the ALJ was not required to accord controlling weight to Dr. Gibson's March 12, 2009 medical opinion, and that the ALJ did not err in failing to adequately explain his reason for rejecting that opinion, as required in the regulations.

Dr. Gibson opined in a March 12, 2009 medical report that Partlow had severe limitations regarding his functional capacity. (R. at 269-70.) The record does not indicate that Dr. Gibson had an ongoing treatment relationship with Partlow. In fact, it would appear that March 12, 2009, was the first time that Dr. Gibson observed Partlow. Accordingly, this appears to be a non-treating physician's physical capacity assessment on an issue reserved to the Commissioner, and as such was not entitled to controlling weight.[13] See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); SSR 96-5p, 61 Fed. Reg. at 34,472. Dr. Gibson's report is two (2) pages in length and primarily consists of conclusions about Partlow's

_____

[13] Dr. Gibson is a non-treating physician, as defined by 20 C.F.R. §§ 404.1502, 416.902. A non-treating physician is one who "has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. There is no evidence in the record that indicates that Dr. Gibson treated or examined Partlow at any time other than the occasion giving rise to the March 12, 2009 report.

functional limitations. (R. at 269.) Dr. Gibson's report notes that Partlow's pain is so severe that it affects his concentration and memory frequently, that he is unable to work full time at any level of exertion, that he cannot sit or stand for more than 1-2 hours at a time, that he can only occasionally lift 11-25 lbs., and that he can frequently lift ten (10) lbs. or less. (R. at 269-70.) Additionally, Dr. Gibson suggested complete restrictions from unprotected heights and being around moving machinery, moderate restrictions from driving automotive equipment, and mild restrictions from exposure to marked changes in temperature and humidity. (R. at 270.) Other than a brief reference to a January 2009 MRI, Dr. Gibson did not discuss any clinical findings, treatment notes, test results, or other medical evidence to support his opinion. (R. at 269-70.)

The ALJ rejected this report because it was "not supported by any clinical evidence in the record." (R. at 13.) While sparse, this is an adequate explanation of the weight the ALJ accorded the opinion. Dr. Gibson is a non-treating physician, his opinion concerned an issue reserved to the Commissioner, and the two-page report provided minimal clinical explanation to support his opinion. In contrast, the ALJ supported his RFC assessment by citing to a number of medical evaluations, objective tests, and treatment notes, which demonstrated that Partlow could perform light work. (R. at 12-13.) Accordingly, the Court FINDS that the

ALJ weighed the evidence in a manner that complies with the regulations and that his findings are entitled to deference. <u>See</u> <u>Lauxman</u>, 321 F. App'x at 769 (finding that the ALJ's mere rejection of a non-treating physician's opinion was an adequate explanation of the weight he afforded the opinion); <u>Oldham</u>, 509 F.3d at 1258 (finding that the ALJ's rejection of a medical opinion and his citation to evidence contrary to that medical opinion was a sufficient explanation of the weight the ALJ accorded to the medical opinion).

## 2. The ALJ's Oral Statement

Partlow claims that the ALJ made a statement at the hearing indicating that he acknowledged the onset of disability.[14] (Pl.'s Mem. 4.) Partlow alleges that the ALJ's oral statement was a preliminary finding of disability, and that the ALJ erred when he

---

[14] The pertinent part of the hearing transcript reads:

| | |
|---|---|
| ATTY: | Yes, sir. Well one other comment, Judge. The evaluation that is Exhibit 10F it's listed as an unknown medical source – |
| ALJ: | Yes. |
| ATTY: | – that is Dr. Greco, the treating physician from Salisbury; he had an unreadable signature on there, but it is Dr. Greco who completed that assessment. |
| . . . | |
| ALJ: | All right. And, obviously, that ends in '08. |
| ATTY: | Yes, sir. And McCreedy (phonetic) was the physical therapy source. |
| ALJ: | Okay. I had to write myself a lot of notes or I'll forget all of this, of course. Well there's no problem with onset based on that. The problem is what's happened since. |

did not adhere, without explanation, to this determination in his written decision. Id. For the following reasons, the Court rejects this claim.

When determining whether a claimant is entitled to Social Security benefits, the Commissioner must go through the five-step sequential analysis required by 20 C.F.R. §§ 404.1520 and 416.920. "The ALJ's written decision . . . controls the findings subject to review" in this Court. See Huff v. Barnhart, 126 F. App'x 85, 87-88 (4th Cir. 2005).

The ALJ's statement that, "there's no problem with onset based on that. The problem is what's happened since," is ambiguous and does not necessarily indicate that the ALJ made even a preliminary finding of disability in this case. Furthermore, the ALJ's statements during a hearing do not represent the ALJ's final decision. Huff, 126 F. App'x at 87-88. Accordingly, the Court FINDS that this claim is without merit.

### 3. Post-Hearing Evidence

Partlow alleges that the ALJ failed to consider evidence that was introduced into the record after the hearing. It appears from the record that the evidence submitted post-hearing was Partlow's medical records from Sentara Healthcare, which were marked as Exhibit 11F, and Dr. Gibson's March 12, 2009 medical opinion, which was marked as Exhibit 12F. The ALJ referred to Exhibit 11F several times in his written opinion (R. at 11, 13), and rejected Exhibit

30

12F, Dr. Gibson's report, when he rejected Dr. Greco's functional assessment (R. at 13). Accordingly, the Court FINDS that the ALJ did consider the evidence and this claim is without merit.

## c. Conclusion

For the reasons discussed above, the Court FINDS that the ALJ properly considered the opinions of Dr. Greco and Dr. Gibson and assigned weight to those opinions in a manner consistent with the regulations. The Court further FINDS that Partlow's claims that the ALJ improperly deviated from an oral statement made at the hearing, and that the ALJ failed to consider certain post-hearing evidence are without merit.

## V. **RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (Doc. No. 7) be DENIED, that Defendant's Motion for Summary Judgment (Doc. No. 10) be GRANTED, and that the decision of the Commissioner be AFFIRMED.

## VI. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to

Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 153-54 (1985); Carr v. Hutto, 737 F.2d 433, 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

United States Magistrate Judge

Norfolk, Virginia
August 5, 2010

32

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Scott Bertram Elkind
801 Roeder Rd
Suite 550
Silver Springs, MD 20910
COUNSEL FOR PLAINTIFF

Mark Anthony Exley
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510
COUNSEL FOR DEFENDANT

Fernando Galindo, Clerk

By:

Deputy Clerk

August 5, 2010